UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WAEL MOHAMMED,                                   CIVIL NO. 07-3037 (RHK/JSM)

      Plaintiff,

v.                                               <u>REPORT AND RECOMMENDATION</u>

DENISE FRAZIER, et al.,

      Defendants.

      JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came before the undersigned upon defendants' Motion to Dismiss [Docket No. 8]. Friedrich A. P. Siekert, Esq. appeared on behalf of defendants. Herbert Igbanugo appeared on behalf of plaintiff. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

## I. FACTUAL BACKGROUND

Plaintiff Wael Mohammed brings this action against Denise Frazier, Field Office District Director, United States Citizenship and Immigration Services ("USCIS"); Paul Novak, Director, Vermont Service Center, United States Citizenship and Immigration Services; Evelyn Upchurch, Director, Texas Service Center, United States Citizenship and Immigration Services; Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services; Alberto Gonzales, Attorney General of the United States; Michael Chertoff, Secretary, United States Department of Homeland Security; and Robert S. Mueller, Director, Federal Bureau of Investigation, seeking a writ to compel defendants to adjudicate his application for adjustment of immigration status.

Plaintiff is a citizen of Egypt who resides in Minnesota in lawful immigrant status with his wife, who has also filed an adjustment of status application, and two children, who are United States citizens.  Complaint, ¶ 3; Declaration of Wael A. Mohammed, ¶¶ 1, 2 dated June 26, 2007 ("Mohammed Decl.") [Docket No. 1-2].  On October 29, 2003, plaintiff's former employer, Ajilon Consulting, filed a Form I-140, Immigrant Petition for Alien Worker, on behalf of plaintiff, which was approved on June 21, 2004 and plaintiff was assigned a priority date of March 31, 2003.  Complaint, ¶ 16, Ex. 2; Mohammed Decl., ¶ 2.  In addition, on October 29, 2003, plaintiff filed a Form I-485 Application to Register Permanent Residence or Adjust Status with the Vermont Service Center of the United States Citizenship and Immigration Services ("USCIS").  Complaint, ¶ 17; Mohammed Decl., ¶ 2.  On August 30, 2004, plaintiff left Ajilon and joined his current employer, American Medical Systems, Inc.  ("AMS").  Mohammed Decl., ¶ 11.  During the course of his employment with Ajilon and AMS, plaintiff obtained his Masters Degree at the University of Minnesota, Carlson School of Management, graduating in January 2007.  Mohammed Decl., ¶¶ 9, 13.   Plaintiff has now been accepted into a Ph.D. program at Arizona State University.  Mohammed Decl., ¶ 13.  Plaintiff was supposed to have started in the Ph.D. program in August, 2007.  Complaint, ¶ 31; Mohammed Decl., ¶ 16.  However, while plaintiff currently has an employment-based green card, immigration law requires that his I-485 adjustment of status application be adjudicated before he is eligible to join a full-time academic study program.  Mohammed Decl., ¶ 16; Declaration of Wael A. Mohammed dated November 16, 2007 ("Mohammed Supp. Decl.") ¶ 7 [Docket No. 19-6].  Arizona State University has postponed plaintiff's admission until January, 2008, on the assumption that he would have achieved lawful

permanent resident status by then. Complaint, ¶ 31; Mohammed Decl., ¶ 16; Mohammed Supp. Decl.. ¶ 8. In anticipation of beginning the Ph. D. program in January 2008, plaintiff gave notice to AMS. Mohammed Supp. Decl.. ¶ 10. At the end of December 2007, plaintiff will have to move out of his student housing and will be out of a job. Mohammed Supp. Decl.. ¶ 9; Ex. 4.

Plaintiff has submitted all essential documentation in support of his I-485 application, and CIS has not requested further information. Mohammed Decl., ¶ 9. The application has not been adjudicated. Mohammed Decl., ¶ 10. In August of 2005, plaintiff was informed that his application was still pending because the FBI name check had not yet been completed. Mohammed Decl., ¶ 15. According to defendants, plaintiff's name check was submitted to the FBI on November 6, 2003 and the FBI received the name check request on March 31, 2004.[1] Supplemental Declaration of Genize X. Walker, ¶ 1; Ex. A [Docket No. 12] ("Supp. Walker Decl."); Declaration of Michael A. Cannon, ¶ 39 [Docket No. 13] ("Cannon Decl."). Generally, the FBI handles name checks on a first-in, first-served protocol; however, CIS may direct that a name check be handled on an expedited basis, and then that name check receives priority. Cannon Decl., ¶ 18.

---

[1]    According to defendants, this nearly 5-month delay between request for and receipt of the name check by the FBI is due to the following: USCIS and the FBI are connected electronically (e.g. email); USCIS sends in the request, along with others, to USCIS in Washington D.C.; the requests are downloaded onto a disc; the disc is delivered to the FBI; and then the disc is uploaded onto the FBI system. Supp. Walker Decl., ¶ 5. While this Court can appreciate the various steps involved in getting the name check onto the FBI system, given that one of the purported purposes of the name check is to ensure that an alien is not a risk to national security or public safety (Defs. Mem., p. 2), it is quite puzzling that USCIS would take almost five months to simply get the request into the hands of the FBI.

On March 2, 2007, plaintiff received a notice from CIS informing him that his application had been transferred from the Vermont Service Center to the Texas Service Center in an effort to speed processing of his application.  Complaint, ¶ 20; Mohammed Decl., ¶ 20.  According to the Texas Service Center, as of October 15, 2007, it had completed employment-based Form I-485 applications that were filed on or before August 25, 2006.  See Pl's Mem., Ex. 2 ("U.S. Citizenship and Immigration Services Texas Service Center Processing Dates Posted October 15, 2007").

On May 14, 2007, plaintiff learned from a USCIS officer that his application was still pending based on the outstanding FBI name check.  Mohammed Decl., ¶ 21.  At this point, it appears as though the FBI name check is the only impediment to a final decision on plaintiff's application. [2]

---

[2]     Defendants maintain that Congress specifically made the FBI fingerprint and name checks mandatory in order to ensure eligibility for adjustment of status, and that the name check must be completed before adjudication of the application for adjustment of status can take place.  See Defs. Mem., pp. 1, 8.  However, this Court has found no statute or regulation that mandates a name check by the FBI prior to its adjudication of adjustment of status applications pursuant to 8 U.S.C. § 1255, nor have defendants cited to this Court any such statute or regulation.  In fact, the sole legal authority cited by defendants for this contention speaks only to fingerprint identification and makes no mention of name checks.

> The Immigration and Naturalization Service shall conduct full fingerprint identification checks through the Federal Bureau of Investigation for all individuals over sixteen years of age adjusting immigration status in the United States pursuant to this section.

8 U.S.C. § 1255 (note) (2005) (added by 108 Stat. 1725, 1766 (1994); Pub.L. No. 103-317, Title V, § 506(d).  See Ahmadi v. Chertoff, 2007 WL 4181659 at * 3 (N.D.Tex. Nov. 27, 2007) (finding that Government did not demonstrate that FBI name check requirement had any support in regulations governing adjustment of status applications).  Nevertheless, for the purpose of this motion, the Court will assume that an FBI name check is a condition that must be completed before an adjustment of status application can be decided by USCIS.

The Complaint seeks an order compelling USCIS to adjudicate plaintiff's application for adjustment of status within 30 days or less.  Complaint, ¶ 2; Complaint, p. 10 ¶ II [Docket No. 1].  Plaintiff alleges that this Court has jurisdiction under 8 U.S.C. 1329 (Immigration and Nationality Act), 28 U.S.C. 1361 (Mandamus Act), 28 U.S.C. 2201 (Declaratory Judgment Act), 28 U.S.C. 1331 (federal question statute) and 5 U.S.C. 551, 555(b), 701, 702 and 706(1) et. seq. (Administrative Procedures Act) Complaint, ¶ 2.  Plaintiff asserts that he has exhausted all available administrative remedies.  Complaint, ¶¶ 13, 24.  Plaintiff also alleges that the failure to adjudicate his Form I-485 application has caused a multitude of problems and considerable harm to him and his family, including the inability to obtain certain types of employment, engage in certain types of businesses, and travel abroad, postponement of his entry into the Ph.D. program, and loss of his current housing and job.  Complaint, ¶ 31; Mohammed Decl. ¶¶ 16-19; Mohammed Supp. Decl. ¶¶ 8-10.

Defendants now bring the current motion to dismiss for lack of subject matter jurisdiction.  [Docket No. 8].

## II.    ANALYSIS

### A.    Standard of Review

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that none of the bases for jurisdiction cited by plaintiff are valid, and that the Immigration and Nationality Act ("INA") bars plaintiff's claim.  Defs. Mem., p. 3 [Docket No. 10].

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may challenge the plaintiff's complaint either on its face or  on the factual

truthfulness of its averments.  See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); see also Osborn v. United States, 918 F.2d 724, 729, n. 6 (8th Cir. 1990).  In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss.  See Osborn, 918 F.2d at 729, n. 6.  The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction.  See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729, n. 6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6).  See Titus, 4 F.3d 590 at 593; Osborn, 918 F.2d at 729, n.6.  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  Osborn, 918 F.2d at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3rd Cir. 1977)).

Here, it is unclear whether defendants are contesting the facts alleged by plaintiff in his Complaint.  Nevertheless, as the parties are relying on facts extrinsic to the Complaint, the Court will treat defendants' motion as a factual challenge to jurisdiction.  See Sawad v. Frazier, 2007 WL 2973833 at *1 (D.Minn. Oct. 9, 2007) (J. Doty) ("When a party moves to dismiss an action for lack of subject matter jurisdiction under Rule 12(b)(1), the court may consider matters extrinsic to the allegations in the complaint

without converting the proceedings to a Rule 56 summary judgment action because the court is 'free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" (citing <u>Osborn</u>, 918 F.2d at 729-30)).

## B.   <u>Discussion</u>

Defendants' motion to dismiss is based on their contention that the Immigration and Nationality Act ("INA") bars plaintiff's claim, and the statutes relied upon by plaintiff do not confer subject matter jurisdiction on this Court.[3]  Defs. Mem., pp. 1, 3.  Thus, it is defendants' position that while plaintiff has been waiting more than 4 years for USCIS to adjudicate his application for adjustment of status, his only remedy is to wait and this Court has no authority to intervene.  For all of the reasons set forth below, this Court rejects defendants' contentions and concludes that it has jurisdiction over plaintiff's suit.

---

[3]     At the hearing, counsel for defendants argued for the first time that the Court had no jurisdiction over Robert Mueller, Director of the FBI, because the FBI has not waived sovereign immunity and there was no statute that required the FBI to conduct name checks.  This argument is rejected for two reasons: first, the motion is not properly before the Court.  As defendants did not raise such a motion and argument in their moving papers, plaintiff had no opportunity to address such a claim, and defendants shall not be permitted to raise it for the first time at oral argument.  Second, while some courts have concluded that they lack jurisdiction over the FBI to compel it to complete the background checks of applicants for adjustment of status, <u>see</u> e.g. <u>Mitova v. Chertoff</u>, 2007 WL 4373045 at * 6 (E.D.Pa. Dec. 13, 2007), the Court finds the reasoning of other courts that have concluded they have jurisdiction over the FBI to be more persuasive, particularly, where as here, defendants submit that the name check by the FBI is a mandatory requirement for adjustment of status.  <u>See</u> e.g. <u>Ahmadi v. Chertoff</u>, 2007 WL 4181659 at *4, n. 9 (N.D.Tex. Nov. 27, 2007). ("[If], as the Government claims, CIS must await completion of a name check, then CIS's duty to adjudicate an application within a reasonable time is also the FBI's duty."); <u>Singh v. Still</u>, 470 F.Supp.2d 1064, 1068 (N.D.Cal. 2007) ("[CIS's] attempt to divorce themselves from the FBI is unavailing.  The critical issue is whether a particular branch of the federal government is responsible for the delay; it is whether the individual petitioner versus the government qua government is responsible.").

1.  <u>8 U.S.C. § 1252(a)(2)(B)</u>

It is defendants' position that 8 U.S.C. § 1252(a)(2)(B) bars judicial review of the

denial of an adjustment of status application.  Therefore, they maintain that a court

cannot compel USCIS to adjudicate an adjustment of status application within a

particular period of time.  Defs. Mem., p. 9.  In short, defendants claim that §

1252(a)(2)(B) strips this Court of jurisdiction over plaintiff's suit and his case should be

dismissed.

In pertinent part, 8 U.S.C. § 1252 (a)(2)(B) states as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory),
> including section 2241 of Title 28, or any other habeas corpus provision,
> and sections 1361 and 1651 of such title, and except as provided in
> subparagraph (D), and regardless of whether the judgment, decision, or
> action is made in removal proceedings, <u>no court shall have jurisdiction to
> review</u> —
>
>> (i) <u>any judgment regarding</u> the granting of relief under section…
>> <u>1255</u> of this title, or
>>
>> (ii) <u>any other decision or action</u> of the Attorney General or the
>> Secretary of Homeland Security the authority <u>for which is specified
>> under this subchapter to be in the discretion of the Attorney
>> General or the Secretary of Homeland Security</u>, other than the
>> granting of relief under section 1158(a) of this title.

(Emphasis added).

Section 1255 of Title 8 is the provision within the INA that bears on plaintiff's

application for adjustment of status.  This statute states:

> The status of an alien who was inspected and admitted or paroled into the
> United States or the status of any other alien having an approved petition
> for classification as a VAWA[4] self-petitioner <u>may be adjusted by the
> Attorney General, in his discretion and under such regulations as he may
> prescribe</u>, to that of an alien lawfully admitted for permanent residence if
> (1) the alien makes an application for such adjustment, (2) the alien is

---

[4]     VAWA stands for the Violence Against Women Act.  <u>See</u> 8 U.S.C. § 1101(a)(51).

> eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

(Emphasis added).

Defendants claim that because § 1255 gives the Attorney General discretion to adjust plaintiff's adjustment of status, it follows that both § 1252(a)(2)(B)(i) and (ii) strip the Court of jurisdiction to address his claims.  The Court disagrees.

By its terms, § 1252(a)(2)(B)(i) applies only to judgments regarding the granting of relief under § 1255.  "A delay in addressing a plaintiff's petition cannot be fairly characterized as a judgment regarding the granting of relief."  Mitova, 2007 WL 4373045 at *3 (citing Han Cao v. Upchurch, 496 F.Supp.2d 569, 572 (E.D.Pa. 2007)).

> Although the INA does not define the term "judgment," it is commonly understood to mean "[t]he pronouncing of a deliberate opinion upon a person or thing" or "[t]he formation of an opinion or notion concerning something by exercising the mind upon it." Id. (citing VIII The Oxford English Dictionary 294, defs. 6 and 7.a. (2d ed.1989)); cf. Iddir v. INS, 301 F.3d 492, 497 (7th Cir.2002) (noting that the term "judgment" is used more than twelve times throughout the INA, and eight of those references denote "judgments" as court orders). In this case, the defendants have not issued a judgment in relation to plaintiff's adjustment of status application. Therefore, 1252(a)(2)(B)(i) does not divest the Court of jurisdiction over plaintiff's claim.

Id.

Furthermore, "the original purpose of this subparagraph was to ensure removal of those individuals adjudicated removable by making the Attorney General's decision final as to relief by adjustment of status.  It was not to immunize the government from all claims based on conduct – even wrongdoing – that happens to relate to the adjustment of status process."  Tang v. Chertoff, 493 F.Supp.2d 148, 152 (D.Mass. 2007); see also Paunescu v. INS, 76 F.Supp. 2d 896, 900 (N.D.Ill. 1999) (rejecting defendants'

contention that "'any judgment' means that this court does not have jurisdiction to 'review' the Attorney General's refusal to entertain plaintiffs' applications"). In this case, clearly no judgment has been issued on plaintiff's application. Accordingly, 8 U.S.C. § 1252(a)(2)(B)(i) does not divest this Court of jurisdiction.

Section 1252(a)(2)(B)(ii) is similarly inapplicable. First, "[t]he jurisdiction stripping language [of Section 1252] applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." Alaka v. Attorney General, 456 F.3d 88, 95 (3d Cir. 2006). "The statute in question, therefore, must specifically provide the discretionary authority before Section 1252 divests the court of jurisdiction." Duan v. Zamberry, 2007 WL 626116 at *2 (W.D.Pa. Feb. 23, 2007). As the Third Circuit stated:

> One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision. That reading, however, is incorrect, because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review discretionary authority specified in the statute. The statutory language is uncharacteristically pellucid on this score; it does not allude generally to "discretionary authority" or to "discretionary authority exercised under this statute," but specifically to "authority for which is specified under this subchapter to be in the discretion of the Attorney General."

Khan v. United States, 448 F.3d 226, 232 (3d Cir. 2006) (quoting Zhao v. Gonzales, 404 F.3d 295 (5th Cir. 2005)); see also Sun v. Chertoff, 2007 WL 2907993 at *2 (D.Minn. Oct. 1, 2007) (quoting same).

There is no explicit provision in either § 1255 (or for that matter, its implementing regulations) that grants the Attorney General or USCIS specific discretion regarding the pace of adjudicating adjustment of status applications; rather, § 1255 only specifies that

the Attorney General may adjust the status of an alien in his discretion.[5]  "While 8

U.S.C. § 1255(a) specifically places the decision of whether to adjust status in the

---

[5]     To the extent that defendants are relying on 8 C.F.R. § 103.2(b)(7) or 8 C.F.R. § 103.2(b)(18) for the proposition that these regulations permit withholding of adjudication of an adjustment to status application until investigation is complete, (Defs. Mem., pp. 8-9), this argument finds no support in the language of the regulations or the facts in this case.  Section 103.2(b)(7) states in pertinent part that "[t]he USCIS may require the taking of testimony, and may direct any necessary investigation."  This regulation says nothing about withholding of adjudication of the adjustment of status application until investigation is complete.  As to § 103.2(b)(18), this regulation states as follows:

> A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

Section 103.2(b)(18) sets forth procedures for withholding of a decision on an application under certain circumstances, beginning one year after an application has been filed and no decision has been made.  However, "this regulation . . . does not deprive this court of jurisdiction."  Saleem, 2007 WL 3132233 at *8.  Furthermore, defendants have made no showing that the requirements of 8 C.F.R. § 103.2(b)(18) have been followed in this case.  Without evidence that this regulation applies to plaintiff or that defendants have complied with its terms, the regulation will not relieve defendants of their obligation to adjudicate plaintiff's application within a reasonable time.  Id. at *9 ("Because defendants do not suggest that they followed the procedures

discretion of the Attorney General, it says nothing about the pace of such a decision, and certainly does not confer on the Attorney General discretion to let such a petition languish indefinitely." Han Cao v. Upchurch, 496 F.Supp.2d 569, 573 (E.D.Pa. 2007); Saleem v. Keisler, 2007 WL 3132233 at *7 (W.D.Wis. Oct. 26, 2007) (quoting same). See also Tang, 493 F.Supp.2d at 153-154 ("The clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the substance of an adjustment of status decision as discretionary, the pacing of such a decision is not so specified."); Ahmadi, 2007 WL 4181659 at *2 ("Section 1252(a)(2)(B)(ii) only preludes judicial review of decisions or actions that are specified to be within the discretion of the Attorney General. . . . [T]he duty to act on an application, as distinguished from how to act, is not specified to be within the discretion of the Attorney General."); Belegradek v. Gonzales, 2007 WL 3091078 at *3 (N.D.Ga. Oct. 18, 2007) ("[§ 1252(a)(2)(B)(ii)] precludes review of discretionary decisions of the Attorney General 'in only the specific circumstances where the [authority for a] 'decision or action of the Attorney General ... is specified under this subchapter to be in the discretion of the Attorney General....' Thus, to avoid judicial review, the Attorney General must rely on an explicit, 'Congressionally-defined, discretionary statutory power ... articulated within sections 1151 through 1378' of Title

---

outlined in §103.2(b)(18), that regulation cannot provide a basis for dismissing this case for a lack of jurisdiction."); Elmalky v. Upchurch, 2007 WL 944330 at *4 (N.D.Tex. Mar. 28, 2007) (where defendants merely cited to regulations without demonstrating that they acted pursuant to and in accordance with the regulations, § 103.2 (b)(18) did not relieve defendants of their obligation to adjudicate application within a reasonable time); Duan, 2007 WL 626116 at *3, n. 4 (observing that defendants did not assert that they acted pursuant to § 103.2(b)(18), and finding that in any event, an action under that regulation "would still be subject to the reasonableness requirement imposed by the APA." (citation omitted)).

8—and not an administrative or other implied discretionary power." (citing <u>Zafar v. U.S.</u> <u>Attorney General</u>, 461 F.3d 1357, 1361 (11th Cir. 2006)); <u>Sun</u>, 2007 WL 2907993 at *2 ("The plain terms of § 1252(a)(2)(B)(ii) require that a decision or action committed to the discretion of USCIS be "specified under" § 1255 or its implementing regulations. Because § 1255 specifies no such discretion with regard to the pace of adjudication of I-485 applications, § 1252 does not strip the court of jurisdiction"); <u>Zhi He v. Chertoff</u>, 2007 WL 2572359 at *4 (D.Vt. Sept. 4, 2007) ("the pace of adjudication has not been specified as discretionary"); <u>Elmalky</u>, 2007 WL 944330 at *4) ("Section 1255(a), . . . 'specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing.'") (citation omitted); <u>Duan</u>, 2007 WL 626116 at *2 ("Although the speed of processing may be 'discretionary' in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, it is not discretionary in the manner required by the jurisdiction-stripping language of the [INA].").

Therefore, pursuant to the plain language of § 1255, as there is nothing in this statute that grants discretion to defendants to determine the pace of adjudication of I-485 applications for adjustment of status, this Court finds that § 1252(b)(2)(B)(ii) does not strip the court of jurisdiction.[6]

---

[6]    This Court recognizes that a number of district courts have reached a contrary conclusion, finding that § 1252(b)(2)(B)(ii) does strip the court of jurisdiction. <u>See</u> e.g. <u>Orlov v. Howard</u>, 2007 WL 4293490 (D.D.C. Dec. 10, 2007); <u>Korobkova v. Jenifer</u>, 2007 WL 3245178 (E.D.Mich. Nov. 2, 2007); <u>Li v. Gonzales</u>, 2007 WL 1303000 (D.N.J. May 3, 2007).   However, for the reasons articulated above, the Court does not find the reasoning of those decisions to be persuasive, and rather joins those courts that have concluded that § 1252(b)(2)(B)(ii) does not strip the Court of jurisdiction.

Second, while some courts have found that the pace at which the USCIS processes an application is a discretionary action within the meaning of 8 U.S.C. § 1252(b)(2)(B)(ii), see Safadi v. Howard, 466 F.Supp.2d 696 (E.D.Va. 2006) and its progeny,[7] this Court joins those courts around the country that have concluded that § 1252(b)(2)(B)(ii) does not bar plaintiff's suit because defendants' inaction does not amount to a decision or action that permits defendants to invoke the protection of this section.

> [A] "decision" means that something must be decided. Although an "action" has a broader meaning, it too suggests that some conclusion has been made about the appropriate course to take. Dong v. Chertoff, No. C 07-0266 SBA, --- F.Supp.2d ----, 2007 WL 2601107 (N.D.Cal. Sep.6, 2007) ("The phrase 'decision or action' connotes some affirmative conduct

---

[7]      In Safadi, the court concluded that an "action" under § 1252(a)(2)(B)(ii) encompasses not just final decisions but "any act or series of acts that are discretionary within the adjustment of status process," including "the completion of background and security checks and the pace at which the process proceeds." 466 F.Supp.2d at 699. See also Shariff v Chertoff, 497 F. Supp. 2d 928 (N.D. Ill. 2007); Grinberg v. Swacina, 478 F.Supp.2d 1350 (S.D.Fla. 2007); Orlov v. Howard, 2007 WL 4293490 (D.D.C. Dec. 10, 2007); Sun v. Gonzales, 2007 WL 3548280 (E.D. Wash. Nov. 15, 2007); Luo v. Keilser, 2007 WL 3357241 (D.D.C. Nov. 14, 2007); Korobkova v. Jenifer, 2007 WL 3245178 (E.D.Mich. Nov. 2, 2007); Wang v. Chertoff, 2007 WL 4139475 (N.D.Ga. Oct. 30, 2007); Tan v. Chertoff, 2007 WL 1880742 (E.D. Mo. June 29, 2007; Li v. Gonzales, 2007 WL 1303000 (D.N.J. May 3, 2007) (all relying on reasoning of Safadi and declining jurisdiction under §1252). However, as Judge Crabb observed in Saleem:

> [The] argument in Safadi is a red herring because an exercise of jurisdiction over plaintiff's claim is not contingent on whether an 'action' is a final decision or includes interim actions taken along the way. The logic of Safadi would have force if plaintiff were challenging defendants' decision to conduct certain background checks or the actions taken in furtherance of that decision…But plaintiff is not challenging any interim action of defendants, only their failure to act. Thus, no matter how narrowly a court defines 'action,' it would require an Orwellian twisting of the word to conclude that it means a failure to adjudicate.

2007 WL 3132233 at *4 (citations omitted).

> by the Attorney General."). Because plaintiff's claim is premised on defendants' refusal to make a "decision" or to take "action" on his application, . . . § 1252(a)(2)(B) is not implicated in this case.

Saleem, 2007 WL 3132233 at *3; see also Soliman v. Gonzales, 2007 WL 4294662 at *5 (E.D.Pa. Dec. 5, 2007) (finding that § 1252(a)(2)(B) did not bar judicial review because USCIS had "not acted in any way with regard to plaintiffs' applications"; Wang v. Chertoff, 2007 WL 4200672 at *4 (D.Ariz. Nov. 27, 2007) ("The defendants argue the term 'decision or action' is sufficiently broad to include the process of adjudication. The court does not agree. . . . [Section 1252(a)(2)(B)(ii)] does not give the Attorney General or the Secretary of Homeland Security discretionary authority over the pace of adjudication."); Elhaouat v. Mueller, 2007 WL 2332488 at *2 (E.D.Pa. Aug. 9, 2007) (discussing cases which found that "the plain language of the provision ... addresses 'decision or action' on immigration matters, not inaction") (citation omitted)); Song v. Klapakas, 2007 WL 1101283 (E.D.Pa. Apr. 12, 2007) ("'Plaintiffs do not ask this court to 'review' a governmental action, but to examine and rectify a gross inaction.'" (quoting Paunescu, 76 F.Supp.2d at 900)); Elmalky, 2007 WL 944330 at *5 (rejecting defendants' argument that "action" in § 1252(a)(2) (B)(ii) refers "to an ongoing process or a series of acts.").

Having found that jurisdiction is not foreclosed by §1252(a)(2)(B), the Court now turns to the question of whether it has subject matter jurisdiction to proceed.

2. Federal Question Statute, Mandamus Act and APA[8]

Plaintiff alleges subject matter jurisdiction based on 28 U.S.C. § 1331, the federal question statute,[9] 28 U.S.C. § 1361, the Mandamus Act, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 et seq.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is appropriate only where "(1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." Castillo v. Ridge, 445 F.3d 1057, 1060-61 (8th Cir. 2006) (citations omitted).

---

[8]     Plaintiff also cited 8 U.S.C. § 1329 and 28 U.S.C. § 2201 as other grounds for the Court's jurisdiction over this matter. Section 1329 states that "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter… Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers." (emphasis added). As the United States has not brought this action, this Court does not have jurisdiction pursuant to § 1329. See Sabhari v. Reno, 197 F.3d 938, 943 (8th Cir. 1999) (Section 1329 does not provide a grant of jurisdiction over actions instituted against officers of the United States). As to 28 U.S.C. § 2201, it is well settled that the Declaratory Judgment Act only enlarges the range of remedies available in federal courts, but does not confer jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Larson v. United States, 995 F.Supp. 969, 971 (D.Minn.,1997) ("[I]t has long been understood that the federal Declaratory Judgment Act, now codified at 28 U.S.C. § 2201 (1994), is a procedural statute, not a jurisdictional statute."). The Declaratory Judgment Act, therefore, cannot serve as an independent basis for subject matter jurisdiction for this Court.

[9]     Defendants correctly argue that the federal question statute does not, in itself, provide subject matter jurisdiction. However, subject matter jurisdiction under the APA does arise under the federal question statute. Califano v. Sanders, 430 U.S. 99, 108 (1977); see also Sabhari, 197 F.3d 938, 943 (8th Cir. 1999) ("[I]f § 1331 is to be used to secure relief against the United States, it must be tied to some additional authority which waives the government's sovereign immunity. Such a waiver may be found in the Administrative Procedure Act.").

The APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Further, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  When judicial review is proper, "[t]he reviewing court shall compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706.  However, the APA does not apply where (1) statutes preclude judicial review;[10] or (2) agency action is committed to agency discretion by law.  5 U.S.C. § 701(a).

In response to plaintiff's claim for relief under the Mandamus Act, defendants argued that mandamus is inappropriate because plaintiff does not have a clear right to adjudication of his application within a specific time frame, and he has an adequate alternative remedy, which is to wait until his application is adjudicated.  Def. Mem., p. 20.  In response to plaintiff's claim under the APA, defendants maintained that the INA (i.e. § 1252(b)(2)(B)) precludes judicial review, the APA precludes judicial review of agency actions committed to the discretion of the agency, there has been no final agency action, and plaintiff has an adequate remedy.  Id., pp. 22-23.  For all of the reasons articulated below, the Court disagrees with defendants' reasoning.

---

[10]   The Court has already determined that 8 U.S.C § 1252(a)(2)(B) does not preclude judicial review.

As a preliminary matter, this Court finds, as have other courts, that analysis of jurisdiction and relief under the Mandamus Act and APA is coextensive, and that there is no need to perform a separate analysis under the two acts. <u>See</u> <u>Sun</u>, 2007 WL 2907993 at *3, n. 7 (citations omitted).

The Court recognizes that district courts around the country are split on the issue of whether jurisdiction lies to entertain a claim for failure to timely adjudicate an adjustment of status application. <u>See</u> <u>e.g.</u> <u>Orlov</u>, 2007 WL 4293490 at *4 ("Several courts have determined that federal courts lack jurisdiction to review delays in the adjustment process. . . But other courts have determined that 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude judicial review of such claims.") (Internal and external citations omitted.)); <u>Khelashvili v. Dorochoff</u>, 2007 WL 4293634 at *2-3 (N.D. Ill. Dec. 6, 2007) ("Although we acknowledge that a number of courts have found no duty to process applications under 8 U.S.C. § 1255(a), . . . we are persuaded by the reasoning of an equal number of courts finding in favor of subject matter jurisdiction and a nondiscretionary duty to adjudicate") (citations omitted)); <u>Sun</u>, 2007 WL 3548280 at *4 ("Many federal district courts agree that the pace at which USCIS adjudicates I-485 applications is nondiscretionary. . . . Other district courts have held that the statutory framework precludes judicial review of the pace at which the government reviews change of status applications." (Internal and external citations omitted.)); <u>Saleem</u>, 2007 WL 3132233 at *2 (citing to numerous decisions around the country that have considered the jurisdictional arguments raised by defendants); <u>Shah v. Hansen</u>, 2007 WL 3232353 at *5 (N.D. Ohio Oct. 31, 2007) (citing to sampling of cases that have found that USCIS has a non-discretionary duty to adjudicate an application for

CASE 0:07-cv-03037-RHK-JSM   Document 22   Filed 12/28/07   Page 19 of 27

adjustment of status and cases that have found the duty to be discretionary).   "In fact, barely a day has gone by in recent weeks without a new decision weighing in on what has become a national judicial debate." Saleem, 2007 WL 3132233 at *3.

Like several other judges in this District,[11] this Court "joins a growing number of district courts in concluding that the USCIS has a duty to adjudicate adjustment of status applications once they have been submitted and that the APA requires the applications to be adjudicated in a reasonable time." Sun, 2007 WL 2907993 at *3 (citations omitted).   In this regard, as Judge Doty succinctly stated in Sun:

> Title 8, section 1255 of the U.S. Code provides that an applicant's status "may be adjusted by the Attorney General, in his discretion ... to that of an alien lawfully admitted for permanent residence." This language only refers to the ultimate decision of whether to grant permanent residence status. It does not provide that the USCIS can choose not to adjudicate Sun's application. The court is convinced that the USCIS cannot. Rather, once an adjustment of status application is before the USCIS, the agency has an affirmative, non-discretionary duty to process that application. Moreover, although § 1255 and its implementing regulations do not provide for a time frame within which the USCIS must adjudicate I-485 applications, the APA requires that the applications be processed in a reasonable time. See 5 U.S.C. § 555(b). Therefore, [plaintiff] has a clear,

---

[11]   See Asrani v. Chertoff, 2007 WL 3521366 at *3 (D.Minn. November 14, 2007) (J. Tunheim); Sawad v. Frazier, 2007 WL 2973833 at *3 (D.Minn. October 9, 2007) (J. Doty); Sun v. Chertoff, 2007 WL 2907993 at *4 (D.Minn. Oct. 1, 2007) (J. Doty); Haidari v. Frazier, 2006 WL 3544922 at *4 (D.Minn. December 8, 2006) (J. Frank).   In a fifth case out of this District, Chaudry v. Chertoff, 2006 WL 2670051 (D.Minn. September 18, 2006) (J. Magnuson), Judge Magnuson found that the mandamus statute did not provide subject matter jurisdiction, and that under the APA (which was not pled) the delay (approximately 22 months from application and 17 months from documentation and interview) was not unreasonable as a matter of law.   Id. at * 2-3.   This Court notes that this was the first case to be decided out of this District, plaintiff was pro se, and Judge Magnuson did not have the benefit of the extensive case law that has developed on the subject since his decision.   In addition, the Court notes that Judge Magnuson did not foreclose plaintiff from returning to court in the future.   He dismissed the case without prejudice "because Plaintiff's claims, if properly pled, may have merit if the FBI and USCIS persist in delaying adjudication of Plaintiff's I-485 petition." Id. at *3.

indisputable and nondiscretionary right to an adjudication of her application within a reasonable time.

Id.[12]   See also Han Cao, 496 F.Supp.2d at 575 ("while USCIS has broad discretion to grant or deny an application for permanent residency, it has a non-discretionary duty to make some decision on the application"); Tang, 493 F.Supp.2d at 154 ("While it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have the discretion to decide not to adjudicate at all." (citation omitted)); Wang, 2007 WL 4200672 at *3 ("[t]he timing of the adjudication process is not a matter over which the USCIS has unfettered discretion.  It has a duty to act within a reasonable time."); Ahmadi, 2007 WL 4181659 at *1 ("the regulations and the majority of court decisions make clear that immigration officials have a nondiscretionary duty to act on the application"); Belegradek, 2007 WL 3091078 at *3 ("[T]he INA imposes a non-discretionary duty on the Attorney General to adjudicate an application for adjustment of status."); Al Daraji v. Monica, 2007 WL 2994608 at *4 (E.D.Pa. Oct. 12, 2007) (finding that there is no discretion over whether to render a decision on an application); Pool v. Gonzales, 2007 WL 1613272 at *2 (D.N.J. June 1, 2007) ("the obligation of the USCIS to process applications is not discretionary and is reviewable by this Court"); Song, 2007 WL 1101283 at *3 (finding mandamus relief appropriate and stating that "USCIS has a non-discretionary duty to act on applications within a reasonable time").

---

[12]   At the hearing, counsel for defendants admitted that the USCIS had a non-discretionary duty to adjudicate adjustment of status applications.  Having made that concession, and where there is no statutory or regulatory basis to support defendants' contention that they have nonreviewable discretion to decide the application whenever they want, defendants "have boxed themselves into a corner."   Saleem, 2007 WL 3132233 at *6-7.

With regard to defendants' argument that plaintiff has an alternative or adequate remedy, i.e. waiting, the Court also finds that such a claim lacks merit.  "The injury that plaintiffs complain of is that they have been required to wait too long already.  It would be disingenuous to now conclude that because they could simply wait longer the court does not have jurisdiction."  Sawad, 2007 WL 2973833 at *4; Sun, 2007 WL 2907993 at *4 (same).  See also Singh, 470 F.Supp.2d at 1071 ("'Waiting for an agency to act cannot logically be an adequate alternative to an order compelling the agency to act.'") (quoting Fu v. Reno, 2000 WL 1644490 at *4 (N.D.Tex. November 1, 2000)); Tang, 493 F.Supp.2d at 150 ("The duty to act is no duty at all if the deadline is eternity."); Kim v. Ashcroft, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004) ("[T]he CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA."); Asrani, 2007 WL 3521366 at *3 (finding that outside of seeking redress from the court, there is no adequate remedy where there was nothing in the record to allow the court to determine when plaintiff's name check would be returned or if it would be returned at all); Haidari, 2006 WL 3544922 at *5 ("Defendants miss the point.  The question is whether the Plaintiffs have adequate, alternative means to address this very issue: the fact that they are still waiting.").

Furthermore, the Court rejects defendants' claim that because no final agency action has been taken on plaintiff's application for adjustment of status, this Court cannot entertain this lawsuit.  The APA defines agency action to include the failure to act.  5 U.S.C. § 551(13).  Consequently, an "administrative agency cannot legitimately evade judicial review forever by continually postponing any consequence-laden action

and then challenging federal jurisdiction on 'final agency action' grounds." Nat'l Parks

Conservation Ass'n v. Norton, 324 F.3d 1229, 1239 (11th Cir. 2003). See also Sierra

Club v. Thomas, 828 F.2d 783, 793 (D.C.Cir. 1987) (to deem withholding of action as

unreviewable would permit the agency to "forever evade our review"). Defendants'

circuitous argument that this Court cannot review plaintiff's claim that no decision has

been made on his application because no decision has been made on his application,

flies in the face of the APA's express directive that courts may "compel agency action

unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. Clearly, the APA itself

provides for review despite a lack of final agency action.

Here, plaintiff's application has been pending for over four years, and the Court

finds that USCIS's failure to act on the application in that time frame constitutes final

agency action for the purposes of this case. See Shah, 2007 WL 3232353 at *6 (finding

that failure to act on an application for over two-and-one-half years constituted a final

agency action under the APA). [13]

---

[13]     Separate from their argument that there has been no final agency action,
defendants also asserted that plaintiff's suit should be dismissed because his claim is
not ripe for review, and that he has not exhausted his administrative remedies. Defs.
Mem., pp. 1, 13-17. Both contentions are rejected. Defendants contend that plaintiff's
claim is not ripe for review because the requisite background investigation has not been
completed for plaintiff's application for adjustment of status. Defs. Mem., p. 13. This
argument is premised on defendants' reasoning that no final agency action has been
taken in plaintiff's case. However, as discussed above, the Court finds that USCIS's
inaction for over four years to be reviewable, and applies the same reasoning to the
ripeness analysis. "In determining whether a claim is ripe for adjudication, the Court
weighs three factors: (1) the probability that the harm alleged by plaintiff will occur; (2)
the sufficiency of the factual record to produce a fair adjudication of the merits; and (3)
the hardship to the plaintiff if judicial relief is denied at this stage in the proceedings."
Totonchi v. Gonzales, 2007 WL 2331937 at *4 (N.D.Ohio Aug. 13, 2007) (citing Adult
Video Ass'n. v. U.S. Dept. of Justice, 71 F.3d 563, 568 (6th Cir. 1995)). First, the harm
alleged by the plaintiff is substantial. Plaintiff is unable to obtain certain types of
employment and travel abroad with confidence. More gravely, plaintiff is unable to join

Because plaintiff can establish a clear and indisputable right to have his application adjudicated in a reasonable amount of time, defendants have a nondiscretionary duty to honor that right, and plaintiff has no other adequate remedy, the Court finds that mandamus and the APA provide a valid basis for subject matter jurisdiction. Therefore, this Court recommends that defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

### C.    Plaintiff's Request for Adjudication

In plaintiff's opposition to defendants' motion to dismiss, he urged the Court to order defendants to immediately process his I-485 application to conclusion or complete his security check and adjudicate his application within 30 days. Pl.'s Mem. Pp. 2, 18. To do so, the Court would necessarily have to find that the delay experienced by plaintiff

---

his graduate school program until he becomes a legal permanent resident, and as of December 31, 2007, he will lose his job and his apartment because he had anticipated enrolling in Arizona State University in January. Mohammed Supp. Decl. ¶¶ 9, 10; Ex. 4. Second, the factual record is sufficiently developed to allow for adjudication. Plaintiff has provided the Court with detailed documentation regarding his claim, and both parties have briefed the issue extensively. Finally, the plaintiff will bear hardship if judicial review is denied at this stage of the proceedings. Barring a decision on his application, plaintiff has absolutely no other options at this point to challenge USCIS's delay in adjudicating his petition. "[T]he danger posed by non-reviewability is the 'unfettered discretion to relegate aliens to a state of 'limbo' leaving them to languish there indefinitely.'" Duan, 2007 WL 626116 at *4 (quoting Kim v. Ashcroft, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004). Given the facts of this case, and that plaintiff has no other avenue of relief to pursue, this case is ripe for review by this Court.

With respect to defendants' exhaustion of remedies argument, in order for plaintiff to exhaust his administrative remedies, he requires a decision on his application. As discussed above ad nauseum, the entire point of plaintiff's case is that there is no decision. In this case, plaintiff has done all he could do to move his application along. He exhausted all avenues before bringing suit. Exhaustion does not preclude the Court from exercising jurisdiction over this case. See Haidari, 2006 WL 3544922 at *5 (finding that defendants' argument that plaintiffs had not exhausted their administrative remedies missed the point where plaintiffs had made extensive efforts to try to speed up the adjudication process).

is unreasonable as a matter of law.   While there is certainly authority to support plaintiff's claim that a delay in excess of 4 years in adjudicating his adjustment of status application is unreasonable (see Singh, 470 F.Supp.2d at 1071 (seven-year delay unreasonable); Yu, 36 F.Supp.2d 922, 932 (D.N.M. 1999) (two-and-a-half year delay unreasonable); Sun, 2007 WL 3548280 at *10 (three-year delay unreasonable); Haidari, 2006 WL 3544922 at *6 (delays of six years and four years unreasonable)), the matter is presently before the Court on defendants' motion to dismiss and not on a motion for summary judgment by either party.   As such, there is no motion before the Court upon which this Court grant the relief sought by plaintiff.[14]   "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of a particular case."   Yu, 36 F.Supp.2d at 935.   Plaintiff filed his application for adjustment of status in October of 2003, over four years ago.   Defendants argue only that this delay is not unreasonable given the investigative demands of the FBI.   Defs. Mem., p. 26 (citing to Cannon Decl., ¶¶ 16-21).   However, the Court cannot on this record determine that the delay is unreasonable as a matter of law.

To determine whether agency delay is reasonable or not, courts have obtained guidance from the six factors set forth in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C.Cir.1984):

> 1. The time agencies take to make decisions must be governed by a rule of reason.

---

[14]   The Court does note that in Haidari, the matter was before the court on a motion to dismiss pursuant to Rule 12(b)(1).   After denying defendants' motion to dismiss, Judge Frank did grant plaintiffs affirmative relief by remanding the matter back to the USCIS and requiring it to complete its adjudication of their I-485 applications within 30 days.   Haidari, 2006 WL 3544922 at *6.

2. Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.

3. Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake.

4. The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority.

5. The court should also take into account the nature and extent of the interests prejudiced by delay.

6. The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80.  See also Yu, 36 F.Supp.2d at 934; Singh, 470 F.Supp2d at 1069; Wang, 2007 WL 4200672 at *4; Sun, 2007 WL 3548280 at *8; Sawad, 2007 WL 2973833 at *5; Sun, 2007 WL 2907993 at *5 (all citing TRAC factors).

Other factors considered by courts in the context of delayed adjudication of adjustment of status applications include "(1) the source of the delay, (2) the complexity of the investigation, (3) whether any party participated in delaying the proceeding, (4) the nature and extent of the interests prejudiced by the delay, and (5) whether expediting action on agency activities will have an adverse affect on higher or competing priorities."  Belegradek, 2007 WL 3091078 at *4 (citations omitted). However, the Court is unable to analyze any of the guiding factors articulated by the courts with the information currently provided by the parties.  In order to make a determination as to whether plaintiff's delay is unreasonable or not, it is necessary to evaluate information specific to plaintiff's case and the reason why plaintiff's name check in particular has been so delayed.  See Sawad, 2007 WL 2973833 at *5; Sun, 2007 WL 2907993 at *5 (both cases finding that before the court could determine

whether delays were reasonable, it required information specific to the adjudication of plaintiffs' applications and to the delay in their FBI name checks). Accordingly, the Court recommends that an appropriate record be developed in a very short period of time to permit the Court to consider cross-motions for summary judgment by the parties on the reasonableness of the delay of completing plaintiff's FBI check and adjudicating his adjustment of status application.[15] Therefore, the Court will recommend:

1. Defendants shall provide to the Court and plaintiff within 15 days of adoption of this Report and Recommendation, evidence specific to plaintiff's application that shows that the delay in processing his name check and adjudicating his application is reasonable.

2. Plaintiff and defendants shall, within 15 days after defendants provide the Court and plaintiff with the evidence described in the preceding paragraph, move for summary judgment on the reasonableness of the delay issue, and schedule a hearing on the motions.

3. The parties shall respond to their opponents' summary judgment motion 10 days after service of the summary judgment motion.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1. Defendants' motion to dismiss be denied.

2. Defendants shall provide to the Court and plaintiff within 15 days of adoption of this Report and Recommendation, evidence specific to plaintiff's application that shows that the delay in processing his name check and adjudicating his application is reasonable.

3. Plaintiff and defendants shall, within 15 days after defendants provide the Court and plaintiff with the evidence described in the preceding paragraph, move for summary judgment on the reasonableness of the delay issue, and schedule a hearing on the motions.

---

[15] Given what is at stake for plaintiff until his application is adjudicated – loss of home, loss of job, delay in starting school, and possible loss of his employment-based green card – it is necessary to address these cross-motions as soon as possible.

4.   The parties shall respond to their opponents' summary judgment motion 10 days after service of the summary judgment motion.


Dated:        December 28, 2007


*s/ Janie S. Mayeron*

JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before January 11, 2008 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.